FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 29 2025   ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, <br><br> Petitioner, <br><br> v. <br><br> META PLATFORMS, INC. <br><br> Respondent. | **MISC. 2 5  1 7 2 1** <br> Misc. Case No. <br><br> Arising from Civil Action No. 5:23-cv-1350-JKP-ESC pending in the United States District Court for the Western District of Texas (San Antonio Div.) |

LEVY, M.J.

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 45 MOTION TO COMPEL RESPONDENT'S COMPLIANCE WITH DOCUMENT SUBPOENA**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................... I

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND........................................................................................................................... 2

    A.   THE UNDERLYING ACTION................................................................................................. 2

    B.   THE SUBPOENA – APRIL 15, 2025 ..................................................................................... 2

    C.   RESPONDENT'S WRITTEN OBJECTIONS TO THE SUBPOENA – APRIL 21, 2025............................ 3

LEGAL STANDARD.................................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

    A.   UNDER RULE 45(C)(2)(A), THIS COURT HAS AUTHORITY TO COMPEL RESPONDENT'S
    COMPLIANCE TO THE SUBPOENA WITHIN THIS JUDICIAL DISTRICT ..................................... 5

    B.   RESPONDENT'S GENERAL BOILERPLATE OBJECTIONS ARE PROCEDURALLY DEFICIENT AND
    SHOULD BE DEEMED A WAIVER OF ANY SPECIFIC OBJECTIONS TO THE SUBPOENA'S ENUMERATED
    REQUESTS ....................................................................................................................... 7

    C.   DISCOVERY SOUGHT IN THE SUBPOENA IS NARROWLY TAILORED AND DOES NOT EXCEED THE
    FAIR BOUNDS OF DISCOVERY UNDER THE APPLICABLE RULES ......................................... 9

    D.   THE STORED COMMUNICATIONS ACT HAS NO BEARING ON RESPONDENT'S OBLIGATION TO
    COMPLY WITH THE SUBPOENA .......................................................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

<span style="font-variant: small-caps;">CASES</span>

*A&F Bahamas, LLC v. World Venture Grp., Inc.,*
   No. CV 17-8523 VAP (SS), 2018 WL 5961297, at *4 (C.D. Cal. Oct. 19, 2018) ........................... 8

*Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC,*
   313 F.R.D. 39, 43 (N.D. Tex. 2015) ................................................................................................... 9

*Am. Plan Administrators v. S. Broward Hosp. Dist.,* No. 21-cv-2663(KAM)(TAM), 2021 WL
   6064845, at *2 (E.D.N.Y. Dec. 22, 2021) ......................................................................................... 5

*CSS, Inc. v. Herrington,*
   354 F. Supp. 3d 702, 709 (N.D. Tex. 2017) ...................................................................................... 6

*Daval Steel Prods. v. M/V Fakredine,*
   951 F.2d 1357, 1364 (2d Cir. 1991) .................................................................................................. 4

*Ford Motor Co. v. Versata Software, Inc.,*
   2017 WL 914703, at *5 (N.D. Tex. Mar. 8, 2017) ........................................................................... 8

*Freund v. Weinstein,*
   2009 WL 4065585, *1, 2009 U.S. Dist. LEXIS 109387, *2 (E.D.N.Y. 2009) .................................. 4

*Fruit of the Loom, Inc. v. Am. Mktg. Enters., Inc.,*
   192 F.3d 73, 75 (2d Cir. 1999) .......................................................................................................... 6

*Hall v. Sullivan,*
   231 F.R.D. 468 (D. Md. 2005) ........................................................................................................... 8

*Henry Schein, Inc. v. Drea,*
   No. 4:21-CV-00192 RGE HCA, 2022 WL 18584628, at *2 (S.D. Iowa May 31, 2022) ................. 6

*HI.Q, Inc. v. ZeetoGroup, LLC,*
   No. MC 22cv1440-LL-MDD, 2022 WL 17345784, at *12 (S.D. Cal. Nov. 29, 2022) .................... 8

*Jenkins v. Nat'l Grid USA Serv. Co., Inc.,*
   No. 15-CV-1219(JS)(GRB), 2019 WL 13233516, at *2 (E.D.N.Y. May 20, 2019) ........................ 9

*JMC Rest. Holdings, LLC v. Pevida,*
   No. 14 CIV. 6157 WFK VMS, 2015 WL 2240492, at *3 (E.D.N.Y. May 12, 2015) ...................... 5

*Leibovitz v. City of New York,*
   No. 15-cv-546-LGSHBP, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) .................................... 7

*Madigan v. Bronstein,*
   No. 18 Misc. 61 (WHP), 2018 WL 1768283, at *3 (S.D.N.Y. Apr. 12, 2018) ................................ 5

*Marens v. Carrabba's Italian Grill,*
  196 F.R.D. 35 (D. Md. 2000) ........................................................................................... 8

*Matter of Warrant to Search a Certain E-Mail Acct. Controlled & Maintained by Microsoft Corp.,*
  829 F.3d 197, 207 (2d Cir. 2016), *vacated and remanded sub nom. United States v. Microsoft*
  *Corp.,* 584 U.S. 236, 138 S. Ct. 1186, 200 L. Ed. 2d 610 (2018) .................................... 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
  545 U.S. 913, 930 (2005) ............................................................................................... 2

*Orix USA Corp. v. Armentrout,*
  No. 3:16-mc-63-N-BN, 2016 WL 4095603 at *2 (N.D. Tex. Aug. 1, 2016) .................... 7

*Paulino v. Dollar Gen. Corp.,*
  3:12–CV–75, 2013 WL 1773892, at *12 (N.D.W.Va. Apr. 25, 2013) ............................. 8

*Simmons v. Fervent Elec. Corp.,*
  No. 14-CV-1804 ARR MDG, 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014) ....... 6

*Tapjets Inc. v. United Payment Servs., Inc.,*
  No. 19CIV3740RRMVMS, 2020 WL 13581674, at *9 (E.D.N.Y. Sept. 17, 2020) ....... 6

*Thompson v. HUD,*
  199 F.R.D. 168 (D. Md. 2001) ........................................................................................ 8

*United States ex rel. Ortiz v. Mount Sinai Hosp.,*
  169 F. Supp. 3d 538, 544 (S.D.N.Y. 2016) ..................................................................... 5

*Wiwa v. Royal Dutch Petroleum Co.,*
  392 F.3d 812, 818 (5th Cir. 2004) .................................................................................. 5

## STATUTES

18 U.S.C. § 2701 .............................................................................................................. 13

## RULES

Fed. R. Civ. P. 45 ......................................................................................................passim

## PRELIMINARY STATEMENT

Petitioner Global Weather Productions, LLC ("Petitioner") respectfully submits this motion to compel respondent Meta Platforms, Inc. ("Respondent") to comply with the non-party document subpoena, dated April 11, 2025, issued pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "Subpoena"), a true and correct copy of which is attached as Exhibit 1 to the attorney declaration of James H. Freeman, filed concurrently herewith ("Freeman Declr.").

Petitioner served the Subpoena in a copyright infringement matter pending in the United States District Court for the Western District of Texas (San Antonio division), captioned *Global Weather Productions, LLC v. Joe Pags Media, LLC,* 5:23-cv-1350-JKP-ESC (W.D. Tex.) (the "Underlying Action"), and designated April 28, 2025 as the compliance date (the "Compliance Date"). By email dated April 21, 2025, Respondent submitted *general* written objections to the Subpoena but has otherwise failed to respond by producing any documents or submitting specific objections to the eleven enumerated requests set forth in the Subpoena.

All of the requests contained in the Subpoena are relevant to the claims or defenses asserted in the Underlying Action, are narrowly tailored to avoid any undue burden and are proportional to the needs of the case.

As a result of Respondent's failure to timely comply with the Subpoena, Petitioner respectfully seeks an Order commanding Petitioner to comply within a reasonable time before May 27, 2025, the deadline to serve expert witness designations in the Underlying Action.

## BACKGROUND

### A. The Underlying Action

In the Underlying Action, Petitioner is the plaintiff-copyright holder who alleges that the defendant, Joe Pags Media, LLC, a Texas-based media company ("Joe Pags"), infringed on Petitioner's copyright to a newsworthy video by displaying the video on Joe Pags' commercial Facebook page @JoeTalkShow (the "FB Account") without Petitioner's authorization. Petitioner alleges a single claim for copyright infringement under 17 U.S.C. § 501 on the basis of several independent theories, including direct infringement and vicarious infringement liability.

Under federal law, one of the requisite elements of a vicarious liability claim is to show that Joe Pags maintained a direct financial interest in the infringing activity posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005) (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it).

### B. The Subpoena – April 15, 2025

On April 15, 2025, Petitioner properly served the valid Subpoena on Respondent, which owns and operates the popular Facebook platform, in order to ascertain the advertising, subscription and monetization revenues generated by Joe Pags' Facebook account, in addition to other information relevant to Petitioner's infringement claim. Petitioner served the Subpoena only after Joe Pags formally served its responses and objections to Petitioner's first set of discovery demands. Petitioner avers that Joe Pag's initial party responses were deficient in that they failed to include any of the financial or other critical information sought by the Subpoena

2

from Respondent. The Subpoena seeks documents that are plainly relevant to and proportionate to the needs of the Underlying Action, particularly with respect to the financial revenues generated by Joe Pags' FB Account, the reportable metrics relating to the allegedly infringing post, and the persons with access to manage and view the FB Account at the time of the alleged infringement. All of the eleven requests set forth in the Subpoena are narrowly tailored in time and scope to the copyright suit in question.

**C.    Respondent's Written Objections to the Subpoena – April 21, 2025**

On April 21, 2015, Respondent responded to the Subpoena by transmitting an email to Petitioner's counsel, a true and correct copy of which is attached as <u>Exhibit 2</u> to the Freeman declaration, in which it purported to state its written objections to the Subpoena (the "Objections"). Notably, Respondent's Objections solely consist of boilerplate objections to the Subpoena *in its entirety*, and do not attempt to respond specifically to each of the Petitioner's eleven document requests set forth in the Subpoena. In substance, Respondent's Objections may be summarized as follows:

a)     Respondent claims that because it is allegedly "headquartered" in Menlo Park, California, the Subpoena is invalid because it commands Respondent to produce documents at the place of Plaintiff's counsel in Uniondale, New York, which Respondent claims is more than 100 miles away from its California "headquarters."

b)     Under 18 U.S.C. § 2701, Respondent claims that is cannot be commanded to produce documents related to the contents of Joe Pags' electronic communications.

c)     Respondent claims that any requests for FB Account details must be obtained directly from Joe Pags because Joe Pags has unfettered access to its own user account at all times.

d)     Respondent avers generalized, boilerplate objections such as: (a) overbroad, unduly burdensome, vague, not calculated to lead to discovery of admissible evidence; (b) privileged or protected information. However, Respondent made no

3

attempt to address nor object to any of the enumerated document requests on an individual basis.

Respondent did <u>not</u> file a motion to quash or to modify the Subpoena by the date of compliance listed on the Subpoena, April 28, 2025, thus waiving its rights to relief under those procedural mechanisms. *See* Fed. R. Civ. P. 45(d)(3). Because Respondent's Objections shirk its responsibility to comply with the Subpoena in blatant disregard of the Federal Rules of Civil Procedure, Petitioner must file the instant Motion. For these reasons and the reasons set forth below, Petitioner respectfully requests that this Court compel Respondent's full compliance with the Subpoena.

## LEGAL STANDARD

"[A] valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1364 (2d Cir. 1991). Subpoenas that are validly issued and served "under Rule 45(a)(3) operate as enforceable mandates of the court on whose behalf they are served." *Freund v. Weinstein*, 2009 WL 4065585, *1, 2009 U.S. Dist. LEXIS 109387, *2 (E.D.N.Y. 2009).

Under Rule 45(a)(2), "[a] subpoena must issue from the court where the action is pending." Fed.R.Civ.P. 45(a)(2). The subpoena may command "production of documents, [or] electronically stored information .... at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person". Fed.R.Civ.P. 45(c)(2)(A). Any objection to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). Where the commanded party objects to a subpoena duces tecum, Rule 45(d)(2)(B)(i) allows the serving party "[a]t any time, on notice to the commanded person" to "move the court for the district where compliance is required for an order compelling production or inspection." Fed.R.Civ.P. 45(d)(2)(B)(i).

4

Federal courts generally apply the requirements of Rule 34 party discovery "with no less force" when enforcing compliance with Rule 45 non-party discovery. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)) (emphasizing that the obligations imposed on requesting parties are the same with non-party discovery as they are with party discovery).

## ARGUMENT

### A. Under Rule 45(c)(2)(A), This Court Has Authority to Compel Respondent's Compliance to the Subpoena Within This Judicial District

"[T]he court for the district where compliance is required is the proper venue for a motion to compel." *JMC Rest. Holdings, LLC v. Pevida*, No. 14 CIV. 6157 WFK VMS, 2015 WL 2240492, at *3 (E.D.N.Y. May 12, 2015); *see also United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 544 (S.D.N.Y. 2016) (remedy for noncompliance to a subpoena is to file a motion to compel in the district where compliance is required). "The place of compliance for a non-party subpoena seeking documents, electronically stored information and tangible things is a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." *Am. Plan Administrators v. S. Broward Hosp. Dist.*, No. 21-cv-2663(KAM)(TAM), 2021 WL 6064845, at *2 (E.D.N.Y. Dec. 22, 2021) *appeal dismissed*, 39 F.4th 59 (2d Cir. 2022) (quoting Fed. R. Civ. P. 45(d)(3)(A)) (quotations omitted).

Courts within this Circuit have determined that, for purposes of Rule 45, the proper location for compliance with a non-party subpoena is the specific address identified on the subpoena. *Id.* ("As Plaintiffs selected their counsel's Manhattan office as the location of compliance, the Southern District of New York is the court for the district where compliance is required."); *see also Madigan v. Bronstein*, No. 18 Misc. 61 (WHP), 2018 WL 1768283, at *3 (S.D.N.Y. Apr. 12, 2018) ("[A]ny motion to compel would properly be brought in the Eastern District of New York .

. . because the subpoena requires attendance at a deposition and production of documents in Brooklyn.").[1]

Other district courts have taken a different view, holding that "the 'place of compliance" for a [non-party] company is in the district, or within 100 miles of, where the company is headquartered.". *Tapjets Inc. v. United Payment Servs., Inc.,* No. 19CIV3740RRMVMS, 2020 WL 13581674, at *9 (E.D.N.Y. Sept. 17, 2020). However, the Court should reject this view on grounds that Rule 45(c)(2)(A), by its express terms, does not require that the place of compliance be within 100 miles from where the non-party company is "headquartered." Instead, Rule 45 merely provides that a non-party "subpoena may command production of documents . . . at a place within 100 miles of where the person . . . regularly transacts business in person". Fed.R.Civ.P. 45(c)(2)(A). Nor does Rule 45 require that the movant meet the burden of showing that the Court has general jurisdiction over a non-party entity subject to subpoena.[2]

Here, on its face, the Subpoena commanded Respondent to produce documents at the law offices of Petitioner's counsel, which is located at 333 Earle Ovington Blvd. in Uniondale, New

---

[1] *Accord CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017) ("for purposes of a Rule 45(d)(2) or 45(d)(3) motion, the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena[.]"); *Henry Schein, Inc. v. Drea*, No. 4:21-CV-00192 RGE HCA, 2022 WL 18584628, at *2 (S.D. Iowa May 31, 2022) ("this Court sides with the courts that look to the face [of] the subpoena.") *Simmons v. Fervent Elec. Corp.*, No. 14-CV-1804 ARR MDG, 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014) ("Since the subpoena at issue requires the deponent's attendance in Manhattan, plaintiff's motion is properly brought in the United States District Court for the Southern District of New York.").

[2] Petitioner respectfully avers that district courts lack authority to impose a higher legal standard on Rule 45(d)(2)(B)(i) movants than that expressly provided for by the Federal Rules of Civil Procedure. *See Fruit of the Loom, Inc. v. Am. Mktg. Enters., Inc.*, 192 F.3d 73, 75 (2d Cir. 1999) ("District court judges are bound by the Federal Rules of Civil Procedure and may not apply their individual practice rules in a manner that is inconsistent with the Federal Rules."). It is self-evident that a company may "regularly transact business in person" within 100 miles of the address listed on a non-party subpoena without having to be formally headquartered in that district.

York 11553, within the Eastern District of New York. *See* Freeman Declr., Exhibit 1. As a matter of public record, Respondent maintains multiple largescale physical office locations in Manhattan, all of which are located within 100 miles of Uniondale, New York.[3] Respondent also employs approximately 5,000 people to work in its Manhattan offices[4] and is registered with New York Department of State to do business in the State of New York.[5] Accordingly, under Rule 45(c)(2)(A), Petitioner readily meets its burden of showing that Respondent "regularly transacts business in person" within 100 miles of Uniondale, New York. The Eastern District of New York is therefore the proper district court to compel Respondent's compliance with the Subpoena.

**B. Respondent's General Boilerplate Objections are Procedurally Deficient and Should Be Deemed a Waiver of any Specific Objections to the Subpoena's Enumerated Requests**

"[I]n responding to a subpoena duces tecum, general or boiler-plate [or unsupported] objections are prohibited." *Leibovitz v. City of New York,* No. 15-cv-546-LGSHBP, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) (quoting *Orix USA Corp. v. Armentrout,* No. 3:16-mc-63-N-BN, 2016 WL 4095603 at *2 (N.D. Tex. Aug. 1, 2016). Indeed, because "boilerplate objections are improper, [they] result in waiver of the unsupported objections." *Leibovitz,* 2017 WL 462515, at *2 (striking "general, boilerplate objections to each of plaintiff's requests for production" on grounds that such objections violate Fed.R.Civ.P. 34(b)(2)(B)); *see also A&F Bahamas, LLC v. World Venture Grp., Inc.,* No. CV 17-8523 VAP (SS), 2018 WL 5961297, at *4 (C.D. Cal. Oct.

---

[3] According to recent news reports, Respondent leases at least three largescale office spaces in Manhattan, including at 770 Broadway, 50 Hudson Yards, and the James A. Farley building in midtown Manhattan, totaling more than 800,000 square feet of office space. Freeman Declr., Exs. 6, 8. Uniondale, NY is situated approximately 28 miles from midtown Manhattan. Freeman Declr. ¶ 11.

[4] As of May 2023, Respondent reportedly employed approximately 5,000 persons in its physical New York offices. Freeman Declr., Ex. 7.

[5] Freeman Declr., Ex. 5.

19, 2018) (explaining that objections under Rule 45(d)(2)(B) are "subject to the same requirements facing a party objecting to discovery under Rule 34," including the requirement that objections be specific rather than general and/or boilerplate); *HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22cv1440-LL-MDD, 2022 WL 17345784, at *12 (S.D. Cal. Nov. 29, 2022) (admonishing nonparty "for providing generalized boilerplate objections" to Rule 45 subpoena). *Paulino v. Dollar Gen. Corp.*, 3:12–CV–75, 2013 WL 1773892, at *12 (N.D.W.Va. Apr. 25, 2013) ("A party's reliance on general objections often results in the waiver of all specific objections.") (citing Fed.R.Civ.P. 33(b)).

Here, Respondent's objections to the Subpoena are boilerplate and non-specific, and therefore Respondent has effectively waived its objections to Petitioner's document requests. *See Ford Motor Co. v. Versata Software, Inc.*, 2017 WL 914703, at *5 (N.D. Tex. Mar. 8, 2017) ("[A] non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest;" that " 'general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)'") (quoting *Am. Fed'n*, 313 F.R.D. at 43); *see also Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006) (finding that a non-party "is subject to the same obligation sand scope of discovery under Rule 45 as if it were a party proceeding under Rule 34" and that a "failure to make particularized objections to document requests constitutes a waiver of those objections.") (citing *Marens v. Carrabba's Italian Grill,* 196 F.R.D. 35 (D. Md. 2000); *Thompson v. HUD,* 199 F.R.D. 168 (D. Md. 2001); *Hall v. Sullivan,* 231 F.R.D. 468 (D. Md. 2005)).

Here, in stating its objections to the Subpoena, Respondent failed to address any specific objections tailored to any of the eleven enumerated document requests in the Subpoena. *See* Freeman Declr., Ex. 1. As such, Respondent's responses solely consist of boilerplate objections, which are tantamount to no objections at all. Having failed to set forth any specific objections to Petitioner's document requests prior to the Compliance Date, and having failed to file any motion to quash or modify the Subpoena by the Compliance Date or within 14 days of service, it has waived its right to object to any one of the eleven document requests. *See Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 43 (N.D. Tex. 2015) ("The failure to serve written objections to a subpoena within the time specified by Rule 45(d)(2)(B) typically constitutes a waiver of such objections, as does failing to file a timely motion to quash.")

**C. Discovery Sought in the Subpoena is Narrowly Tailored and Does Not Exceed the Fair Bounds of Discovery Under the Applicable Rules**

As to the proper scope of discovery, Federal Rule of Civil Procedure Rule 26(b) explains that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Jenkins v. Nat'l Grid USA Serv. Co., Inc.*, No. 15-CV-1219(JS)(GRB), 2019 WL 13233516, at *2 (E.D.N.Y. May 20, 2019) (citing Fed.R.Civ.P. 26(b)).

Here, the Subpoena enumerates eleven document requests, each of which are plainly relevant to Petitioner's claim for copyright infringement and which are proportional to the needs of the Underlying Action. *See* Freeman Declr., Ex. 1.

**Request No. 1**: *All records, documents and communications concerning the Video (https://www.facebook.com/watch/?v=429869679171943).*

> • This request is relevant to Petitioner's claim for copyright infringement of the Video, which is the subject matter of the Underlying Action.

**Request No. 2**. *All records, documents and communications showing the total amount of gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) for calendar years 2021, 2022, 2023 and 2024.*

> • This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had a direct financial interest in the copyrighted content posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc.,* 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

**Request No. 3**. *All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from subscription fees, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "subscription fees" refers to any monies generated by Defendant through subscription fees, including but not limited to via Meta's Verified Subscription feature, which allows Facebook account holders to verify accounts and offer enhanced features and support, and/or Facebook Subscriptions for Creators feature, which allows Facebook users the opportunity to support Facebook account holders with monthly recurring payments in exchange for exclusive content, inter alia. See also https://www.facebook.com/business/help/1623027561131428; https://www.facebook.com/help/219372401985734; https://www.facebook.com/business/help/310335859546716?id=558489708108283.*

> • This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had a direct financial interest in the copyrighted content posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc.,* 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

**Request No. 4**. *All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from*

*advertising revenues, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "advertising revenues" refers to any monies generated by Defendant by way of any advertising program offered by Facebook, including but not limited to In Stream Ads, see also https://www.facebook.com/business/help/1884527914934148?id=1200580480150259; and Ads on Facebook Reels, see also https://www.facebook.com/business/help/686805875660832?id=376980407544978.*

• This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had a direct financial interest in the copyrighted content posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc.,* 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

**Request No. 5.** *All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from Facebook's Performance bonus program, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "Facebook's Performance bonus program" refers to Facebook's program which allows Facebook account holders to earn money based on interactions on public Facebook posts. See also https://www.facebook.com/business/help/695445891770760*

• This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had a direct financial interest in the copyrighted content posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc.,* 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

**Request No. 6.** *All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from content monetization, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "content monetization" refers to Facebook's Content Monetization Beta, which allows Facebook account holders to earn money based on the performance of their eligible Facebook videos, reels, photos, stories, and text posts, and also includes in-stream ads, ads on reels, and performance bonuses. See also https://creators.facebook.com/tools/facebook-content-monetization.*

• This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had a direct financial interest in the copyrighted content

posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

**Request No. 7.** *All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from Facebook Stars, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "Facebook Stars" refers to a Facebook feature that allows Facebook account holders to earn money from Facebook users who show appreciation for the content posted to the FB Account. See also https://www.facebook.com/business/help/300444652164185?id=2514811085399429*

     • This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had a direct financial interest in the copyrighted content posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

**Request No. 8.** *All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from affiliate marketing, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "affiliate marketing" refers to Facebook's program which allows Facebook account holders to earn money by promoting products or services through affiliate links on the FB Account. See https://www.facebook.com/business/help/1373029553139482*

     • This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had a direct financial interest in the copyrighted content posted to the FB Account. *See Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

**Request No. 9.** *All reportable metrics for the Video (https://www.facebook.com/watch/?v=429869679171943) including but not limited to views, reach, engagement, interactions, follows, shares, watch time, total plays.*

12

• This request is relevant to Petitioner's claim for copyright infringement of the Video, which is the subject matter of the Underlying Action.

**Request No. 10.** *Reels performance data for all Facebook Reels posted to the Account (https://www.facebook.com/JoeTalkShow) from July 1, 2022 through September 30, 2022.*

• This request is relevant to Petitioner's claim for copyright infringement of the Video, which is the subject matter of the Underlying Action. Furthermore, the time frame is narrowly circumscribed to within a three month period of the allegedly infringing activity.

<u>**Request No. 11.**</u> *All documents sufficient to identify all persons or admins with access to manage and view the FB Account from July 1, 2022 through September 30, 2022, including, but not limited to, access to manage and view permissions, content, messages, ads and insights.*

• This request is relevant to Petitioner's claim for vicarious infringement liability, which requires a showing that Joe Pags had the right and ability to supervise the infringing activity. *See Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. 913 at 930 (to establish a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it.)

In sum, because the requests contained in the Subpoena are not beyond the scope of reasonable discovery, Respondent should be compelled to comply with these straightforward requests.

**D. The Stored Communications Act Has No Bearing on Respondent's Obligation to Comply with the Subpoena**

In its response to the Subpoena, Respondent cites to a federal statute, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, for the proposition that "providers are not the proper recipients of requests for the contents of users' electronic communications." See Freeman Declr, Exhibit 2. As summarized by the Second Circuit, the Stored Communications Act:

imposes general obligations of non-disclosure on service providers and creates several exceptions to those obligations. Thus, its initial provision, § 2701, prohibits unauthorized third parties from, among other things, obtaining or altering electronic communications stored by an ECS, and imposes criminal penalties for its violation. Section 2702 restricts the circumstances in which service providers may disclose information associated with and contents of stored communications to listed exceptions, such as with the consent of the originator or upon notice to the intended recipient, or pursuant to § 2703. Section 2703 then establishes conditions under which the government may require a service provider to disclose the contents of stored communications and related obligations to notify a customer whose             material             has             been             accessed.

*Matter of Warrant to Search a Certain E-Mail Acct. Controlled & Maintained by Microsoft Corp.,* 829 F.3d 197, 207 (2d Cir. 2016), *vacated and remanded sub nom. United States v. Microsoft Corp.,* 584 U.S. 236, 138 S. Ct. 1186, 200 L. Ed. 2d 610 (2018).

Here, as a result of Respondent's failure to state any specific objections to the Petitioner's enumerated document requests, Respondent has failed to explain how the Stored Communications Act would shield Respondent from complying with the Subpoena by responding to the specific document requests.

## CONCLUSION

For the reasons set forth above, Petitioner respectfully requests that this Court should order Respondent to comply with the Subpoena within a reasonable time before May 27, 2025, by producing responsive documents thereto, and to grant further relief as the Court deems just and necessary.

Dated: April 29, 2025
      Uniondale, NY

                                 Respectfully Submitted:

                                 **SANDERS LAW GROUP**

                                 By: */s  James H. Freeman /*
                                 James H. Freeman, Esq.
                                 333 Earle Ovington Blvd. Ste. 402
                                 Uniondale, NY 11553
                                 (516) 203-7600
                                 jfreeman@sanderslaw.group

*Counsel for Petitioner*
*Global Weather Productions, LLC*