F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    APR 29 2025    ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MISC. 2 5   1 7 2 1

GLOBAL WEATHER PRODUCTIONS, LLC,

Petitioner,

v.

META PLATFORMS, INC.

Respondent.

Arising from Civil Action No. 5:23-cv-1350-JKP-ESC pending in the United States District Court for the Western District of Texas (San Antonio Div.) (the "Underlying Action")

LEVY, M.J.

**DECLARATION OF JAMES H. FREEMAN, ESQ.**

I, JAMES H. FREEMAN, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury, as follows:

1.    I am an attorney duly admitted to practice law before this Court and am an associate of Sanders Law Group, attorneys for the petitioner Global Weather Productions, LLC (*"Petitioner"*) in this action and, as such, have personal knowledge of all facts and circumstances upon which this Declaration is based.

2.    I submit this declaration in support of Petitioner's motion for an Order compelling Respondent Meta Platforms, Inc. to comply with a valid non-party subpoena duces tecum pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(a).

3.    Attached as Exhibit 1 is a true and correct copy of the subpoena duces tecum, dated April 11, 2025, served on Respondent on April 15, 2025.

4.    Attached as Exhibit 2 is a true and correct copy of the email from Respondent to Petitioner, dated April 21, 2025, in which it purports to respond to the subpoena.

5.    Attached as Exhibit 3 is a true and correct copy of the Second Amended Complaint

filed in the Underlying Action.

6.      Attached as Exhibit 4 is a true and correct copy of the Scheduling Order in the Underlying Action.

7.      Attached as Exhibit 5 is a true and correct copy of Entity Information published on-line by the New York Department of State, Division of Corporation, showing that Respondent is registered to do business in New York (accessed 4/22/25).

8.      Attached as Exhibit 6 is a true and correct copy of a webpage print-out from Respondent's website showing that Respondent maintains physical offices and employs persons in midtown Manhattan (accessed 4/22/25).

9.      Attached as Exhibit 7 is a true and correct copy of a Crain's New York Business news article reporting that Respondent employed approximately 5,000 persons in New York. (accessed 4/29/25).

10.     Attached as Exhibit 8 is a true and correct copy of a Costar.com news article reporting that Respondent maintained approximately 800,000 square feet of physical office space in midtown Manhattan as of February 2024. (accessed 4/29/25).

11.     According to Google maps, which I accessed on-line on April 29, 2025, the distance between Petitioner's counsel's law offices in Uniondale, New York and midtown Manhattan (where Respondent maintains multiple physical offices) is approximately 28 miles.

Dated: April 29, 2025.

Respectfully Submitted:

SANDERS LAW GROUP

By: /s/ James H. Freeman /
James H. Freeman, Esq.
333 Earle Ovington Blvd. Ste. 402
Uniondale, NY 11553

(516) 203-7600
jfreeman@sanderslaw.group

*Counsel for Petitioner*

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    APR 29 2025    ★

LONG ISLAND OFFICE

# EXHIBIT 1

AO 88B (Rev 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas (San Antonio)

| | |
|---|---|
| Global Weather Productions, LLC | ) |
| _____ | ) |
| *Plaintiff* | ) |
| | ) Civil Action No. 5:23-cv-01350-JKP-ESC |
| Joe Pags Media, LLC | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: **Meta Platforms, Inc.: Attn: Subpoena Compliance Department**
**1601 Willow Road, Menlo Park, CA 94025**

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time. date. and place set forth below the following documents. electronically stored information. or objects, and to permit inspection. copying. testing. or sampling of the material:

**SEE ATTACHED ADDENDUM**

| Place: Sanders Law Group, 333 Earle Ovington Boulevard, Suite 402, Uniondale, NY 11553 | Date and Time: 04/28/2025 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises. land. or other property possessed or controlled by you at the time. date. and location set forth below. so that the requesting party may inspect. measure. survey. photograph. test. or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c). relating to the place of compliance; Rule 45(d). relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g). relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4/11/2025

CLERK OF COURT

OR

_____          /s/ Craig Sanders
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Global Weather Productions LLC _____, who issues or requests this subpoena. are:
Craig B. Sanders, Esq., Sanders Law Group, 333 Earle Ovington Blvd, Suite 402, Uniondale, NY 11553

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents. electronically stored information. or tangible things or the inspection of premises before trial. a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ADDENDUM

As used herein, the following terms shall have the scope and meaning indicated:

## DEFINITIONS

a)     **"Action"** or **"Complaint"** refers to the current version of the Second Amended Complaint and exhibits annexed thereto, filed in the United States District Court for the Western District of Texas (San Antonio Division) and captioned *Global Weather Productions, LLC v. Joe Pags Media LLC*, 5:23-cv-cv-1350.

b)     **"Plaintiff"** refers to Plaintiff Global Weather Productions, LLC, a Wyoming limited liability company, together with any and all of its present and former agents, attorneys, representatives and any other person(s) acting on its behalf.

c)     **"Defendant"** refers to Joe Pags Media, LLC, a Texas limited liability company, together with any and all of its present and former agents, attorneys, representatives and any other person(s) acting on its behalf, including but not limited to Joe Pags, Joe Pagliarulo, and any d/b/a used in connection with the LLC's enterprise, including but not limited to "The Joe Pags Show."

d)     **"FB    Account"**    refers    to    the    Facebook    account    at    URL: https://www.facebook.com/JoeTalkShow which is the subject of the Action and which is operated, maintained, owned and/or supervised by Defendant.

e)     **"Website"** refers to the website at URL: www.joepags.com.

f)     **"Video"**    means    the    video    appearing    at https://www.facebook.com/watch/?v=429869679171943 depicting water rescues on Interstate 30 in downtown Dallas after a flash flooding in August 2022. A true and correct copy of a screenshot of the Video, as it appears on the FB Account, is attached hereto as Exhibit A.

g)     **"Concerning", "Relating To"** or **"Referring To"** means relating to, referring to, or pertaining in any way, directly or indirectly, to a document or class of documents, or an event, act or occurrence, and includes, without limitation, comprising, constituting, analyzing, describing, evidencing, comparing, summarizing, discussing, reflecting, showing, referring to, forming the basis of, containing, or supporting the event, act, or occurrence.

h)     **"Document(s)"** is used in the broadest possible sense to mean and include, without limitation, any written, printed, typed, photocopied, electronically stored, recorded or otherwise reproduced communication, representation or transmittal of information, whether

composed of letters, words, numbers, pictures, sounds or symbols or any combination thereof. Without limiting the generality of the foregoing, the term "Document(s)" includes, but is not limited to, correspondence, memoranda, notes, records, letters, electronic mail (email) messages, mobile text messages, envelopes, telegrams, messages, studies, analyses, contracts, agreements, drafts, working papers, summaries, statistical statements, financial statements or work papers, accounts, analytical records, reports and/or summaries of investigations, applications for or registrations of intellectual property (whether patents, copyrights, trademarks, or otherwise), trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings or other communications, whether oral or written, of any type, including inter- and intraoffice communications, questionnaires, surveys, charts, graphs, sound recordings, commercials, films, tapes, tape recordings, disks, compact disks, CD-ROMs, data cells, print-outs, web screens and data posted to websites, data downloaded from websites, all other data compilations from which information can be obtained (translated or otherwise rendered, if necessary, into usable form) and any preliminary versions or drafts of any of the foregoing.

     i)     **"Communications"** means the transmittal of information in any form, including without limitation in any written, oral or electronic form, and including all Documents. **"Person"** means natural persons, groups of natural persons acting as individuals, groups of natural persons active in a collegial capacity (e.g. as a committee, board of directors, etc.), government ministries, agencies, offices, departments or other units thereof, corporations, partnerships, associations, joint ventures, proprietorships, or any other incorporated or unincorporated business or social entity.

     j)     **"Parties"** refers to Plaintiff and Defendant.

## RULES OF CONSTRUCTION

A.     The following rules of construction apply to all discovery requests:

     i.     **All/Any/Each.** The terms "all," "any," and "each" shall be construed as encompassing any and all.

     ii.     **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

     iii.     **Number.** The use of the singular form of any word includes the plural and vice

versa as necessary to bring within the scope of each Interrogatory all information that might otherwise be construed to be outside its scope.

iv.    **Tenses.** Unless otherwise stated, the use of a verb in any tense shall be construed as the use of the verb in all other tenses as necessary to bring within the scope of each Interrogatory all information that might otherwise be construed to be outside its scope.

## INSTRUCTIONS

A.    Each request for documents seeks production of all documents described, along with any attachments, drafts, and non-identical copies, in any language whatsoever.

B.    Documents are to be produced in their entirety, without redaction or expurgation.

C.    If any document request cannot be complied with in full, it should be complied with to the extent possible, with an explanation as to why full compliance is not possible.

## DOCUMENTS TO BE PRODUCED

1.    All records, documents and communications concerning the Video (https://www.facebook.com/watch/?v=429869679171943).

2.    All records, documents and communications showing the total amount of gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) for calendar years 2021, 2022, 2023 and 2024.

3.    All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from subscription fees, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "subscription fees" refers to any monies generated by Defendant through subscription fees, including but not limited to via Meta's Verified Subscription feature, which allows Facebook account holders to verify accounts and offer enhanced features and support, and/or Facebook Subscriptions for Creators feature, which allows Facebook users the opportunity to support Facebook account holders with monthly recurring payments in exchange for exclusive content, *inter alia*.    See also https://www.facebook.com/business/help/1623027561131428;
https://www.facebook.com/help/219372401985734;
https://www.facebook.com/business/help/310335859546716?id=558489708108283.

3

4.      All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from advertising revenues, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "advertising revenues" refers to any monies generated by Defendant by way of any advertising program offered by Facebook, including but not limited to In Stream Ads, *see also* https://www.facebook.com/business/help/1884527914934148?id=1200580480150259; and Ads on Facebook Reels, *see also* https://www.facebook.com/business/help/686805875660832?id=376980407544978.

5.      All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from Facebook's Performance bonus program, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "Facebook's Performance bonus program" refers to Facebook's program which allows Facebook account holders to earn money based on interactions on public Facebook posts. *See also* https://www.facebook.com/business/help/695445891770760

6.      All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from content monetization, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "content monetization" refers to Facebook's Content Monetization Beta, which allows Facebook account holders to earn money based on the performance of their eligible Facebook videos, reels, photos, stories, and text posts, and also includes in-stream ads, ads on reels, and performance bonuses. *See also* https://creators.facebook.com/tools/facebook-content-monetization.

7.      All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from Facebook Stars, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "Facebook Stars" refers to a Facebook feature that allows Facebook account holders to earn money from Facebook users who show appreciation for the content posted to the FB Account. *See also* https://www.facebook.com/business/help/300444652164185?id=2514811085399429

8.      All records, documents and communications showing the gross revenues generated by Defendant's FB Account (https://www.facebook.com/JoeTalkShow) from affiliate marketing, for calendar years 2021, 2022, 2023 and 2024. For sake of clarity, the term "affiliate marketing" refers to Facebook's program which allows Facebook account holders to earn money by promoting

products    or    services    through    affiliate    links    on    the    FB    Account.    *See*
https://www.facebook.com/business/help/1373029553139482

9.    All    reportable    metrics    for    the    Video
(https://www.facebook.com/watch/?v=429869679171943) including but not limited to views, reach,
engagement, interactions, follows, shares, watch time, total plays.

10.    Reels    performance    data    for    all    Facebook    Reels    posted    to    the    Account
(https://www.facebook.com/JoeTalkShow) from July 1, 2022 through September 30, 2022.

11.    All documents sufficient to identify all persons or admins with access to manage
and view the FB Account from July 1, 2022 through September 30, 2022, including, but not limited
to, access to manage and view permissions, content, messages, ads and insights.

# EXHIBIT A

Case No.: 5:23-cv-1350

**EXHIBIT 2:** INFRINGEMENT
URL: https://www.facebook.com/watch/?v=429869679171943



facebook.com/JoeTalkShow                                                    Finish update



## Joe Pags ✔

384K followers · 197 following

**Message**    **Follow**    **Search**

Posts    Subscriber hub    About    Mentions    Reviews    Reels    More ▾

## Intro

Joe 'Pags' Pagliarulo
@joetalkshow
joepags.com
Nationally Syndicated Talk Show Host

📍 **Page · Public figure**

📞 (888) 941-7247

✉️ pags@joepags.com

🌐 joepags.com

🕐 Always open ▾

⭐ 96% recommend (1,435 Reviews) ⓘ

## Featured

 **Joe Pags** ✔
November 17, 2024

If you have any questions about how to get my show now since the changes on 11/9 -- please ask here. I will guide you on how to find the show live and/or how to get the podcasts or the videos of the interviews.

Thanks so much for getting what I'm laying down and continuing to want to listen/watch.

***Update*** You can get the daily podcasts on:
...

## Photos                    See all photos

## Posts                                          ⚙ Filters  ✎

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 2 9 2025   ★

LONG ISLAND OFFICE

# EXHIBIT 2

**From:** Records <records@records.facebook.com>
**Sent:** Monday, April 21, 2025 11:29 AM
**To:** Craig Sanders <csanders@sanderslaw.group>
**Subject:** [Case #9457741]

— —

Hello,

Meta Platforms, Inc. ("Meta") received a subpoena from you issued on behalf of a litigant on April 15, 2025 (Case# 5:23-cv-01350-JKP-ESC) seeking information associated with a purported Facebook and/or Instagram account. Meta objects to your subpoena for the reasons below. Please review this information, as well as information available in the relevant Facebook's Help Center, located at http://www.facebook.com/help/ and/or Instagram's Help Center, located at https://help.instagram.com/. Meta reserves all objections and rights.

To the extent your request is improperly addressed to WhatsApp, Meta does not accept service of subpoenas and other legal processes directed to WhatsApp LLC. All subpoenas and other legal processes related to the WhatsApp service must be directed to WhatsApp LLC.

For requests addressed to Instagram LLC, Meta will not accept subpoenas directed to Instagram LLC. All subpoenas must be directed to the entity mentioned in the terms of service that are applicable to the use of Meta's service. For U.S. users, all subpoenas must be directed to Meta Platforms, Inc.

If your subpoena is not issued from a court with subpoena power over Meta, this letter is not intended by Meta, and should not be construed by you, as consent by Meta to the jurisdiction or subpoena power of the issuing court. Meta is a Delaware corporation headquartered in California and objects to the subpoena power of any state court outside of these jurisdictions, and objects to any federal subpoena that demands compliance more than 100 miles from Meta's Menlo Park, California headquarters in violation of Fed. R. Civ. P. 45(c)(2)(A).

Requests for User Content and Information

Meta addresses all requests related to user accounts in accordance with the federal Stored Communications Act, 18 U.S.C. §§ 2701, et seq. Please note that service providers are not the proper recipients of requests for the contents of users' electronic communications.

Requests for the Content of a User Account Must be Directed to the User

If you are seeking the content of a user's electronic communications, such as messages, posts, comments, photos, or videos, you must direct your request to the user or other non-provider entities. Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents. Various tools are available to help users access and download their information. Descriptions of these tools are available in our Help Center.

Meta does not produce user content in response to consent forms. Users can directly respond to party or non-party discovery requests without Meta's involvement. Information about deactivated and deleted accounts, and deleted information, is available in our Help Center and our Data Use Policy.

Requests for Account Details and Non-Content Information

If you are a non-governmental entity seeking non-content basic subscriber information associated with a user account that cannot be obtained from the user, your subpoena is not otherwise objectionable, and your subpoena uniquely identifies an account by URL or email address, Meta may produce reasonably available basic subscriber information, if any, after providing 21-days notice to the user of an affected account. If you wish to proceed with this limited scope of discovery, please contact us. Depending on the facts of the case, Meta reserves the right to object to production of non-content basic subscriber information on First Amendment grounds. See Glassdoor, Inc. v. Superior Court, 9 Cal. App. 5th 623, 634-35 (2017). If you are a governmental entity, please also note that the federal Stored Communications Act prevents governmental entities from using civil discovery subpoenas to obtain non-content basic subscriber information. See F.T.C. v. Netscape Communications Corp., 196 F.R.D. 559, 561 (N.D. Cal. 2000).

Additional Considerations and Objections

Meta does not waive personal service of private party, non-governmental legal process. Meta and its records custodians are located in Menlo Park, California, which is where the Company resides.

Please ensure that any requests for Instagram or Facebook user data are correctly addressed to:

Meta Platforms, Inc.
1 Meta Way,
Menlo Park,
CA 94025

Meta cannot respond to subpoenas containing requests that are overly broad, unduly burdensome, vague, or not reasonably calculated to lead to the discovery of admissible evidence. Please ensure that you have identified a unique user account by URL or email address and that your request is appropriately date and field limited.

Meta objects to all requests that seek protected or privileged information, including information protected by the attorney-client or other applicable privilege, or confidential, proprietary, or trade secret information.

Meta is not in a position to authenticate or verify account content. Such requests should be directed to the creator or recipient of the content. Meta also is not in a position to provide witnesses for trial or deposition. The appearance of a records custodian is unnecessary because any non-content records produced are self-authenticating.

Meta does not preserve information in response to third party subpoenas or private party or non-governmental requests. Such requests should be directed to the user.

Please correct all deficiencies in your subpoena before reserving.

Finally, if you are seeking early or pre-action discovery, please provide a court order authorizing such discovery.

Sincerely,
Meta Platforms, Inc.

NOTICE: This email (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. Unless you are the intended recipient, you may not use, copy, or retransmit the email or its contents.

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    APR 29 2025    ★

LONG ISLAND OFFICE

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**(SAN ANTONIO DIVISION)**

| | |
|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC | § § § § |
| *Plaintiff*, | § Case No: 5:23-cv-1350-JKP-ESC § |
| v. | § § |
| JOE PAGS MEDIA, LLC; McLAUGHLIN MEDIA MANAGEMENT LLC D/B/A M3 MEDIA MANAGEMENT | § § § § |
| *Defendants*. | |

## SECOND AMENDED COMPLAINT

Plaintiff Global Weather Productions, LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Second Amended Complaint against defendants Joe Pags Media, LLC ("Joe Pags") and McLaughlin Media Management LLC d/b/a M3 Media Management ("M3 Media") (collectively, "*Defendants*") states and alleges as follows:

## INTRODUCTION

1.     This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C §101 *et seq*.

2.     Via written assignment, Plaintiff obtained the copyright to a video of water rescues on Interstate 30 in downtown Dallas after a flash flooding in August 2022 (the "*Video*") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

3.     Defendant Joe Pags owns and controls a social media account on Facebook known as @Joe Pags *("FB Account")*.

4.     Upon information and belief, in October 2021, Defendant M3 Media contracted with Joe Pags to provide web management and/or marketing services in this jurisdiction and at relevant times participated in the operations of the FB Account.

5.     Defendants, without permission or authorization from Plaintiff, actively copied

and/or displayed the Video on the FB Account, and financially benefitted therefrom, and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

6.    Plaintiff Global Weather Productions, LLC is a Wyoming limited liability company with a principal place of business in Sheridan, Wyoming.

7.    Upon information and belief, Defendant Joe Pags Media, LLC is a domestic limited liability company with a principal place of business at 287 Coyote Trail, Spring Branch in Comal County, Texas.

8.    Upon information and belief, Defendant McLaughlin Media Management LLC d/b/a M3 Media Management is a foreign limited liability company with a principal place of business at 125 W. 55th St., New York, New York 10019.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

10.    This Court has personal jurisdiction over Joe Pags because it maintains its principal place of business in Texas.

11.    This Court has personal jurisdiction over M3 Media because, upon information and belief, it has engaged in continuous and systematic activity in the State of Texas, including but not limited to entering into a services contract with Joe Pags in the State of Texas to provide web management services for the material benefit of Joe Pags, a Texas company.

12.    Venue is proper under 28 U.S.C. §1391(a)(2) because Defendants do business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

**A.**    **Plaintiff's Copyright Ownership**

2

13.    Third party Michael Brandon Clement ("Clement") is a professional videographer by trade who is the legal and rightful owner of certain videos which he commercially licenses.

14.    Clement has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of his videos while many others are the subject of pending copyright applications.

15.    Clement's videos are original, creative works in which he owns protectable copyright interests.

16.    On or about August 22, 2022, Clement first published the Video, which has a duration of three minutes and seven seconds, via YouTube at URL: https://www.youtube.com/watch?v=rhR-R-cgAXA.  A copy of a screengrab from the Video for reference is attached hereto as Exhibit 1. Further, a full copy of the Video shall be provided to the Court and Defendant by email.

17.    In creating the Video, Clement personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image. Clement also selected the subject matter and all of the cinematic elements in the Video.

18.    On September 1, 2022, the Video was registered by the USCO under Registration No. PA 2-374-324 (the "324 Registration").

19.    Clement created the Video with the intention of it being used commercially and for the purpose of news reporting and documentation of a weather-related event in the Dallas area.

20.    On June 4, 2023, subsequent to the effective date of the 324 Registration, Clement assigned all rights, titles and interests in the copyright to the Video to Plaintiff by a written assignment agreement, including the right to bring this lawsuit.

21.    Plaintiff obtained the copyright to the Video with the intention of it being used commercially and for the purpose of news reporting and documentation of a weather-related event in the Dallas area.

**B.    Defendants' Infringing Activity**

22.    Joe Pags operates in the commercial news reporting industry, where the exploitation of copyrighted materials is prevalent.

23.    The FB Account is a part of and used to advance Joe Pags' commercial enterprise.

3

24.    Joe Pags has access to post content to its FB Account and, upon information and belief, controls which entities and/or individuals have access to post content to the FB Account.

25.    The FB Account is monetized in that it promotes Joe Pags' talk show and media business and, upon information and belief, Joe Pags profits from these activities.

26.    Upon information and belief, in October 2021, Joe Pags entered into a written contract with M3 Media in the State of Texas which provided, in relevant part, that M3 Media would participate in the operation of the FB Account, among other digital assets controlled by Joe Pags.  Pursuant to that Agreement, Joe Pags would "have full access to the website during the term of this agreement with unlimited rights to post news and opinion to the site as they deem appropriate." Furthermore, by the express terms of that Agreement, M3 did not assume "any claim, license or other control over any of the intellectual property of Joe Pags including, but not limited to, the domain name, website, and web content hosted on behalf of those entities..."

27.    Upon information and belief, on or about August 23, 2022, Defendant Joe Pags displayed a substantial portion of the Video, about 59 seconds in duration, on the FB Account as part of an on-line post at URL: https://www.facebook.com/watch/?v=429869679171943. A copy of a screengrab of the Account including a still frame from the Video is attached hereto for reference purposes as Exhibit 2.

28.    In the alternative, upon information and belief, on or about August 23, 2022, Defendant M3 Media displayed a substantial portion of the Video on the FB Account.

29.    Without permission or authorization from Plaintiff, upon information and belief, Defendant Joe Pags volitionally copied and/or displayed a substantial portion of Plaintiff's copyright protected Video on the FB Account.

30.    In the alternative, without permission or authorization from Plaintiff, upon information and belief, Defendant M3 Media volitionally copied and/or displayed a substantial portion of Plaintiff's copyright protected Video on the FB Account.

31.    Plaintiff first observed and discovered the Infringement on August 24, 2022.

32.    Upon information and belief, a substantial portion of the Video was copied and displayed by Defendants without license or permission, thereby infringing on Plaintiff's copyrights in and to the Video (hereinafter all of the unauthorized uses set forth above are

4

referred to as the "*Infringement*").

33.    The Infringement includes a URL ("*Uniform Resource Locator*") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than transitory duration and therefore constitutes a specific infringement. *17 U.S.C. §106(5).*

34.    The Infringement is an exact copy of a substantial portion of Plaintiff's copyrighted Video that was directly copied and displayed by Defendant Joe Pags and/or M3 Media on the FB Account.

35.    Upon information and belief, Defendant Joe Pags takes an active and pervasive role in the content posted on its FB Account, including, but not limited to copying, posting, selecting, commenting on and/or displaying images including but not limited to Plaintiff's Video.

36.    Upon information and belief, Defendant M3 Media takes an active and pervasive role in the content posted on its FB Account, including, but not limited to copying, posting, selecting, commenting on and/or displaying images including but not limited to Plaintiff's Video.

37.    Upon information and belief, the Video was willfully and volitionally posted to the FB Account by Defendant Joe Pags.

38.    In the alternative, upon information and belief, the Video was willfully and volitionally posted to the FB Account by Defendant M3 Media.

39.    Upon information and belief, Defendant Joe Pags was aware of facts or circumstances from which the determination regarding the Infringement was apparent. Defendant Joe Pags cannot claim that it was not aware of the infringing activities, including the specific Infringement which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringement on the part of Defendant Joe Pags.

40.    Upon information and belief, Defendants engaged in the Infringement knowingly and in violation of applicable United States copyright laws.

41.    Upon information and belief, Defendant Joe Pags had the legal right and ability to control and limit the infringing activities on its FB Account and exercised and/or had the right

and ability to exercise such right.

42.    Upon information and belief, Defendant Joe Pags monitors the content on its FB Account.

43.    Upon information and belief, Defendant M3 Media monitors the content on the FB Account.

44.    Upon information and belief, Defendant Joe Pags has received a financial benefit directly attributable to the Infringement.

45.    Upon information and belief, the Infringement increased traffic to the FB Account and, in turn, caused Defendant Joe Pags to realize an increase in its advertising revenues and/or merchandise sales.

46.    Upon information and belief, a large number of people have viewed the unlawful copies of the Video on the FB Account.

47.    Upon information and belief, Defendant Joe Pags at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

48.    Defendants' use of the Video harmed the actual market for the Video.

49.    Defendants' use of the Video, if widespread, would harm Plaintiff's potential market for the Video.

50.    As a result of Defendants' misconduct, Plaintiff has been substantially harmed.

### FIRST COUNT
*(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)*
*[Against Defendants Joe Pags and/or M3 Media]*

51.    Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

52.    The Video is an original, creative work in which Plaintiff owns a valid copyright.

53.    The Video is properly registered with the USCO and in compliance with all statutory formalities under the Copyright Act and under regulations published by the USCO.

54.    Plaintiff has not granted Defendants a license or the right to use the Video in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendants.

6

55.     Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant Joe Pags and/or Defendant M3 Media improperly and illegally copied, reproduced, distributed, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

56.     Defendants' reproduction of the Video and display of the Video constitutes willful copyright infringement.

57.     Upon information and belief, Defendant Joe Pags and/or Defendant M3 Media willfully infringed upon Plaintiff's copyrighted Video in violation of Title 17 of the U.S. Code, in that Defendants, jointly or severally, used, published, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Video without Plaintiff's consent or authority, by using it on the FB Account.

58.     As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to any an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against pursuant to 17 U.S.C. § 504(c).

59.     As a result of the Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendants, jointly and severally.

60.     As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of his copyright pursuant to 17 U.S.C. § 502.

## SECOND COUNT
### *(Contributory Copyright Infringement)*
### *[Against Defendant Joe Pags]*

61.     Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

62.     Defendant Joe Pags herein has caused, enabled, facilitated and materially

7

contributed to the Infringement by providing the tools and instruction for the Infringement via the FB Account.

63.    Defendant Joe Pags has directly and indirectly promoted the Infringement and refused to exercise its ability to stop the Infringement made possible by its distribution.

64.    At relevant times, Defendant Joe Pags had a continuing contractual relationship with M3 Media which enabled M3 Media to participate in or cause the Infringement and, thus, Defendant Joe Pags' actions substantially contributed to the infringing activity by granting M3 Media access to the FB Account to post copyrighted content, including the Video.

65.    Defendant Joe Pags' actions show a relationship to the infringing activity beyond just mere operation of a website business.

66.    Defendant Joe Pags is liable as a contributory infringer since, upon information and belief, it had actual and/or constructive knowledge of M3 Media's infringing conduct and induced, caused and/or materially contributed to that conduct by failing to ensure that M3 media had the proper licenses to publish copyrighted content on the FB Account.

67.    Defendant Joe Pags' conduct and contributory infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiff, and has caused substantial damage to Plaintiff.

68.    Upon information and belief, Defendant Joe Pags willfully contributorily infringed upon Plaintiff's copyrighted Video in violation of Title 17 of the U.S. Code.

69.    As a result of Defendant Joe Pags' violations of Title 17 of the U.S. Code, Plaintiff is entitled to any an award of actual damages and disgorgement of all of Defendant Joe Pags' profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant Joe Pags for each infringement pursuant to 17 U.S.C. § 504(c).

70.    As a result of the Defendant Joe Pags' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant Joe Pags.

71.    As a result of Defendant Joe Pags' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of his copyright

8

pursuant to 17 U.S.C. § 502.

## THIRD COUNT
### *(Vicarious Copyright Infringement)*
### *[Against Defendant Joe Pags]*

72.    Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

73.    Upon information and belief, at all material times hereto, Defendant Joe Pags had the right and ability to supervise and/or control the infringing conduct of its Employees, Agents, Affiliates, Vendors and/or members, and declined to exercise the right and ability to supervise or control that infringing conduct, despite its legal right to stop or limit the directly infringing conduct as well as the practicable ability to do so.

74.    As a direct and proximate result of such refusal to exercise its right to stop or limit the infringing conduct, Defendant Joe Pags has continued to infringe upon Plaintiff's Video, which in turn generates profits for Defendant Joe Pags directly from the use of the Infringement.

75.    Upon information and belief, Defendant Joe Pags enjoyed a direct financial benefit from the Infringement from, *inter alia*, advertising revenue from the increased traffic to its FB Account and from increase in fees paid by advertisers and sponsors.

76.    Upon information and belief, in the alternative, Defendant Joe Pags receives a material and/or financial benefit from operating the FB Account as it promotes Joe Pags' corporate services and brandname.

77.    Upon information and belief, Defendant Joe Pags enjoyed a directed financial benefit from using the appeal or "draw" of Plaintiff's Video to increase user traffic to the FB Account, thereby increasing advertising or other revenue, and/or by increasing Joe Pags' customer base.

78.    Defendant Joe Pags is liable as a vicarious infringer since it profited from the Infringement while declining to exercise a right to stop or limit it.

79.    Upon information and belief, Defendant Joe Pags willfully vicariously infringed upon Plaintiff's copyrighted Video in violation of Title 17 of the U.S. Code.

9

80.    As a result of Defendant Joe Pags' violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant Joe Pags' profits attributable to the Infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant Joe Pags for each work infringed pursuant to 17 U.S.C. § 504(c).

81.    As a result of the Defendant Joe Pags violations of Title 17 of the U.S. Code, the court in its discretion may award Plaintiff the recovery of its reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

82.    As a result of Defendant Joe Pags' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of its copyrights pursuant to 17 U.S.C. § 502.

## JURY DEMAND

83.    Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment as follows:

That the Court enters a judgment finding that Defendants have infringed on Plaintiff's rights to the Video in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

> a. finding that Defendant Joe Pags and/or M3 Media directly infringed Plaintiff's copyright interest in and to the Video by copying and displaying a substantial portion of the Video without a license or consent;
>
> b. finding that Defendant Joe Pags vicariously and/or contributorily infringed Plaintiff's copyright interest in and to the Video by copying and displaying a substantial portion of the Video without a license or consent;
>
> c. for an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an

SIG SANDERS
LAW GROUP

d.  award for statutory damages against each Defendant jointly and severally

for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

e.  for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendants from any

infringing use of any of Plaintiff's works;

f.  for costs of litigation and reasonable attorney's fees against Defendants,

jointly and severally, pursuant to 17 U.S.C. § 505;

g.  for pre-judgment interest as permitted by law; and

h.  for any other relief the Court deems just and proper.

DATED: August 5, 2024

SANDERS LAW GROUP

By: _/s/ Craig Sanders_
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
csanders@sanderslaw.group
File No.: 126914

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Second Amended
Complaint was served via CM/ECF on August 5, 2024 on all counsel of a record

s/ *James H. Freeman* /
James H. Freeman

Case No.: 5:23-cv-1350

**<u>EXHIBIT 1:</u>** STILL FRAME OF VIDEO



**EXHIBIT 2:** INFRINGEMENT
URL: https://www.facebook.com/watch/?v=429869679171943



# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, | § § § § | |
| *Plaintiff,* | § § | SA-23-CV-01350-JKP |
| vs. | § § § | |
| JOE PAGS MEDIA, LLC, | § § § | |
| *Defendant.* | § § § § § | |

Before the Court is the above-styled action.  On January 27, 2025, the parties appeared

through counsel at an Initial Pretrial Conference.  Pursuant to Federal Rule of Civil Procedure

16, and consistent with the parties' Agreed Scheduling Recommendations and representations at

the Initial Pretrial Conference, the Court issues this Scheduling Order and the following dates are

entered to control the course of this case:

1. <u>Offer of Settlement</u>:  The parties asserting claims for relief must submit a written offer
of settlement to opposing parties by **January 21, 2025**, and each opposing party must respond in
writing by **January 24, 2025**.

2. <u>Amend/Supplement Pleadings, Joinder of Parties</u>:  Subject to Local Rule CV-15, the
parties shall file all motions to amend or supplement pleadings or to join additional parties by
**April 28, 2025**.

3. <u>Designation of Witnesses, Experts, and Exhibits</u>:  All parties asserting claims for relief
shall file their designation of potential witnesses, testifying experts, and proposed exhibits, and
must **SERVE** on all parties but **NOT FILE** the materials required by Fed. R. Civ. P. 26 by **May
27, 2025**.  Parties resisting claims for relief must file their designation of potential witnesses,
testifying experts, and proposed exhibits, and must **SERVE** on all parties but **NOT FILE** the
materials required by Fed. R. Civ. P. 26 by **June 26, 2025**.  All designations of rebuttal experts
must be designated within **30 days** of receipt of the report of the opposing expert.

4. <u>Expert Testimony Objection</u>:  An objection to the reliability of an expert's proposed
testimony under Federal Rule of Evidence 702 must be made by motion, specifically stating the
basis for the objection and identifying the objectionable testimony, **within 30 days** of receipt of

1

the written report of the expert's proposed testimony, or **within 30 days** of the expert's deposition, if a deposition is taken, whichever is later.

5. <u>Discovery</u>:  The parties must complete discovery by <u>**August 26, 2025**</u>.  Counsel may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances, and no trial setting will be vacated because of information obtained in post-deadline discovery.

6. <u>Dispositive Motions</u>:  All dispositive motions shall be filed by <u>**September 26, 2025**</u>. Dispositive motions and responses to dispositive motions are limited to 20 pages in length, and any reply in support of a dispositive motion is limited to 10 pages in length. *See* Local Rule CV-7.

7. <u>Mediation</u>: The parties must mediate this case on or before <u>**September 10, 2025**</u>, and file a report in accordance with Local Rule CV-88 within one week of the completion of mediation.

8. The Court will set dates for trial and the final pretrial conference after ruling on any dispositive motions or after the deadline for such motions passes without a pertinent filing. At that time, the Court will also set appropriate deadlines for trial and pretrial conference matters.

9. If at any time during the pendency of this lawsuit, you would like to consent to the trial of your case by a United States Magistrate Judge, please indicate your consent on the attached form or request a form through the Clerk's Office.  If all parties consent to trial of this case by a United States Magistrate Judge, this Court may enter an order referring the case to a United States Magistrate Judge for trial and entry of judgment.

**IT IS SO ORDERED**.

SIGNED this 29th day of January, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, | § § § | |
| *Plaintiff,* | § § § | SA-23-CV-01350-JKP |
| vs. | § § § | |
| JOE PAGS MEDIA, LLC, | § § § | |
| *Defendant.* | § § § § | |

## CONSENT TO PROCEED TO TRIAL BEFORE
## A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. § 636(c), the parties to the above captioned civil matter hereby waive their rights to proceed before a judge of the United States District Court and consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including the trial, and order the entry of judgment. Any appeal shall be taken to the United States Court of Appeals for this judicial circuit, in accordance with 28 U.S.C. § 636(c)(3).

_____    By:_____
Party                                                                    Attorney
_____    By:_____
Party                                                                    Attorney
_____    By:_____
Party                                                                    Attorney

APPROVED this the _____ day of _____, 2025.


_____
JASON K. PULLIAM
UNITED STATES DISTRICT JUDGE

3

# EXHIBIT 5

**An official website of New York State.**
Here's how you know ⌄



# Department of State
## Division of Corporations

## Entity Information

Entity Detail

**ENTITY NAME:** META PLATFORMS, INC.
**DOS ID:** 3842367
**FOREIGN LEGAL NAME:** META PLATFORMS, INC.
**FICTITIOUS NAME:**
**ENTITY TYPE:** FOREIGN BUSINESS CORPORATION
**DURATION DATE/LATEST DATE OF DISSOLUTION:**
**SECTIONOF LAW:** 1304 BCL - BUSINESS CORPORATION LAW
**ENTITY STATUS:** ACTIVE
**DATE OF INITIAL DOS FILING:** 08/06/2009
**REASON FOR STATUS:**
**EFFECTIVE DATE INITIAL FILING:** 08/06/2009
**INACTIVE DATE:**
**FOREIGN FORMATION DATE:** 07/29/2004
**STATEMENT STATUS:** CURRENT
**COUNTY:** NEW YORK
**NEXT STATEMENT DUE DATE:** 08/31/2025
**JURISDICTION:** DELAWARE, UNITED STATES
**NFP CATEGORY:**

ENTITY DISPLAY

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** CORPORATION SERVICE COMPANY

**Address:** 80 STATE STREET, ALBANY, NY, UNITED STATES, 12207

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

**Name:** MARK ZUCKERBERG

**Address:** 1 META WAY, MENLO PARK, CA, UNITED STATES, 94025

**Address:** 1 META WAY, MENLO PARK, CA, UNITED STATES, 94025

**Name:**

**Address:**


Entity Primary Location Name and Address

**Name:**

**Address:**


Farmcorpflag

**Is The Entity A Farm Corporation:** NO


Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|


AgenciesApp DirectoryCountiesEventsProgramsServices

# EXHIBIT 6

4/22/25, 4:45 PM                                    Meta in New York, NY

 the muse                                    SIGN IN    ≡

Search Jobs

Main Profile
New York City

**Career & Job Opportunities at Meta**



Other Locations

- Seattle, WA
- Silicon Valley, CA



**Meet NYC Employees**



LEARN MORE

**Yumeng Tao**

Engineering Manager

Yumeng spends her days working with machine learning models for search products and completing product-level coding projects.



LEARN MORE

**Wenting Xiong**

Software Engineer, Machine Learning

Wenting collects data, analyzes it, and uses the results to train machine learning models and help build Instagram's recommendation system.

4/22/25, 4:45 PM                                                                                      Meta in New York, NY



## Constant Support and Encouragement

Meta New York is also home to Instagram New York, and everyone has a seat at the table. It's a collaborative environment where people care about everyone's views, from researchers, to designers, to engineers, and more. Meta team members aren't confined solely to the projects they're assigned to. They're encouraged to take action on any new ideas they may have. In some cases, they can even dedicate a few days or a month to working on a new project.

## Meaningful Work

It's easy for Meta employees to be excited to come to work. Every day, they get to work on initiatives and technology that affect people—and society overall. From Instagram to Meta Quest to Whatsapp to Messenger, Meta teams build products that empower more than 3 billion people around the world to share ideas, offer support and make a difference.



"We're very fast-growing worldwide, so I feel that there's plenty of opportunity to build new, exciting products that can affect people on a daily basis."

- Yumeng Tao, Research Scientist

https://www.themuse.com/profiles/meta/location/NewYorkCity

4/22/25, 4:45 PM

# NYC Office

Meta

770 Broadway

New York, NY

10003




Meta in New York, NY

4/22/25, 4:45 PM                                    Meta in New York, NY



## Now hiring at Meta

Explore career & job opportunities at Meta by keyword.

Keyword

[ Search ] x Clear Search

- **META**
  Connectivity Engineer

  **THIS JOB IS IN**
  New York, NY

  SAVE

  VIEW FULL POSTING ›

- **META**
  Integrated Marketing Manager, Luxury Licensing Manager

  **THIS JOB IS IN**
  New York, NY

  SAVE

  VIEW FULL POSTING ›

- **META**
  Documentation Engineer / Technical Writer

  **THIS JOB IS IN**
  New York, NY

  SAVE

  VIEW FULL POSTING ›

- **META**
  Research Scientist, Machine Learning (PhD)

  **THIS JOB IS IN**
  New York, NY

  SAVE

  VIEW FULL POSTING ›

- **META**
  Data Center Design Architect

  **THIS JOB IS IN**
  New York, NY

  SAVE

  VIEW FULL POSTING ›

4/22/25, 4:45 PM                              Meta in New York, NY

<u>VIEW ALL JOBS</u>



**ABOUT THE MUSE**             **POPULAR JOBS**                    **GET INVOLVED**

About Us                       New York Jobs                      For Employers

Careers                        San Francisco Jobs                 For Partners

FAQs                           Seattle Jobs                       The Muse Book: The New Rules of Work

Contact Us                     Engineering Jobs                   For Career Coaches

Search Jobs                    Marketing Jobs                     Send Feedback About The Muse

Browse Companies               Information Technology Jobs        Tell A Friend

Career Advice                  Salaries

Terms of Use                   Search Job Titles

Privacy Policy

**JOIN THE CONVERSATION**

f   in   🐦   p   📷

# EXHIBIT 7

4/29/25, 10:44 AM                         Meta and Facebook layoffs put New York City's workforce at 5,000 I Crain's New York Business



Home › Technology

May 31, 2023 03:28 PM

## Meta's New York City workforce to drop to around 5,000

CARA EISENPRESS

   

📄 REPRINTS



Associated Press

Meta Platforms laid off 548 employees in a second round of firings last week that brings its total New York headcount

Already a subscriber? Login

## To Continue Reading...

Subscribe today and get access to this story and other breaking news for ~~$16~~ $1 your first month.

Get a Corporate Plan

Subscribe Now

View all subscription options

**RECOMMENDED FOR YOU**

 Etsy artisans, shoppers poised for pain under Trump's tariff plans

 Wall Street urges IPO hopefuls to trim valuations in weak market

 Google agrees to buy cloud security firm Wiz for $32B

 Sponsored Content: Unlocking energy savings: How AI is transforming building efficiency

# Most Popular

1    432 Park owners sue again, this time over allegedly hidden facade problems

Meta and Facebook layoffs put New York City's workforce at 5,000 | Crain's New York Business

**2**       State reaches $254B budget deal — with a catch, Hochul says

**3**       New hospital opens on site of former St. Vincent's Medical Center

**4**       Caregivers file wage theft suit against PPL amid troubled home care consolidation

**5**       Bryant Park Grill owner vows to keep restaurant open after lease expires Wednesday

## GET OUR NEWSLETTERS

Staying current is easy with Crain's news delivered straight to your inbox, free of charge. Click below to see everything we have to offer.

| Enter Business Email | SIGN UP HERE |

## SUBSCRIBE TODAY!

Don't miss the chance to get the biggest news first! Stay connected to New York business news in print and online

SUBSCRIBE

## CONNECT WITH US

Our Mission

*Crain's New York Business is the trusted voice of the New York business community—connecting businesses across the five boroughs by providing analysis and opinion on how to navigate New York's complex business and political landscape.*

# CRAIN'S NEW YORK BUSINESS

A CRAIN FAMILY BRAND

## CONTACT US

685 Third Avenue
New York, NY 10017
1-877-824-9379

Contact us/ Help Center

Staff directory

Crain jobs

## EVENTS

Submit Your Event

All Upcoming Events

Crain's Events

Past Crain's Events

Webcast Archives

Livestreams

Corporate Membership

## RESOURCES

Advertise with Us                                             Reprints

Crain's Content Studio                                        AdChoices

Crain's New York Business app                                 Sitemap

Newsletters                                                   Corrections and Clarifications

## LEGAL

Terms and Conditions

Privacy Policy

Privacy Request

4/29/25, 10:44 AM                    Meta and Facebook layoffs put New York City's workforce at 5,000 | Crain's New York Business



Copyright © 1996-2025, Crain Communications, Inc. All Rights Reserved.

# EXHIBIT 8

4/29/25, 10:45 AM                                     News | Meta Dumps Chunk of Its New York Offices



☰   CoStar™     Products & Solutions     Who We Serve     [ Login ]     Add a Listing  ▼

News      Properties      Leasing      Sales      Owners      Tenants      Directory      Markets

# Meta Dumps Chunk of Its New York Offices

Tech Giant Opts Out of Renewing Large Portion of Space in Vornado-Owned Building



Silicon Valley's Meta is again walking back plans to expand in the nearly 1.2 million-square-foot building at 770 Broadway in New York. (CoStar)

**By Katie Burke**
**CoStar News**
February 14, 2024 | 5:27 P.M.

  

The days of Facebook parent Meta bolstering the office leasing of New York landlord Vornado Realty Trust look to be less concrete as the Silicon Valley tech giant offloads another chunk of its property in the city.

The company is looking to give up about 275,000 square feet at Vornado's 770 Broadway building once its lease expires in June, the latest reduction effort Meta has pursued to curb expenses and redirect capital to higher-priority investments.

The nonrenewal will land roughly a year after the Menlo Park, California-based social media provider signed on for more space in the nearly 1.2 million-square-foot NoHo building, a sign that it is still looking for ways to cut space from its previously vast real estate portfolio.

The ongoing cuts to Meta's real estate fit alongside a backdrop of other tech companies that have offloaded space as part of an industrywide effort to pull back on certain expenses.

While the cuts aren't likely to be as aggressive as those made in previous years, Colin Yasukochi, the director of CBRE's Tech Insights Center, told CoStar News they'll likely continue through 2024 as companies adjust to recent layoffs and prioritize investments in areas such as artificial intelligence.

 "A lot of tech employers have cut excesses and have reprioritized projects to refocus on growth sectors," he said. "There is still excess capacity in the system as it relates to office portfolios, and while jobs at some companies may grow in the second half of the year, that doesn't mean office demand will grow right away."

After adding about 300,000 square feet to its 770 Broadway footprint last year, Meta has filled more than 800,000 square feet in the building. With the latest offloading move, however, that will shrink back down by about one-third.

**Related Content**



**After Meta's 'Year of Efficiency,' Tech Giant Moves Forward With Less Real Estate** > >

A Meta spokesperson did not immediately respond to CoStar News' requests to comment. Vornado, which confirmed the downsizing, said the company's remaining 500,000 square feet in the building is part of a long-term agreement that likely won't be affected by additional cuts.

The Facebook parent's shrinking real estate holdings is a reversal after years of signing some of the country's largest, most high-profile deals.

Meta signed one of New York's largest office leases of 2020 when it leased Vornado's Farley Building only to walk back initial plans to expand its footprint at Hudson Yards — the largest private U.S. real estate development. It has also ended a deal for one of its offices at 225 Park Ave. S in Gramercy Park.

## Leaner Times Ahead

The cuts may not end anytime soon.

Company executives have emphasized Meta's commitment to moving forward as a smaller, more efficient business that is expected to result in slower hiring and a shrunken office portfolio.

"A lot of people looked at what we were doing as a short-term thing, but the part about making the company leaner is the most important part to take forward," Meta CEO Mark Zuckerberg said on the company's earnings call this month. "We're in a place right now where the business is performing well and the obvious question is, 'Should we invest more in things?' But the biggest thing holding me back from doing that is I've come around on thinking we operate better as a leaner company."

The company spent nearly $3.5 billion through 2023 on restructuring efforts that included office closings, severance and personnel costs, and other related expenses. That's in addition to the more than $4.6 billion Meta spent through 2022 as it raced to respond to slowing advertising revenue and mounting losses in

its Reality Labs division, which produces the company's augmented and virtual reality hardware and software.

The company employed about 67,315 people by year-end 2023, a 22% drop compared to the prior year.

If Meta were to implement additional cuts to its New York portfolio, it would likely deal a heavy blow to Vornado, which counts the tech giant as its largest tenant.

Prior to its 770 Broadway downsizing, Meta leased a total of 1.45 million square feet from Vornado, according to Securities and Exchange Commission filings. All told, the company's real estate footprint spans roughly 36 million square feet, according to CoStar data, more than half of which is office space concentrated around its Silicon Valley headquarters.

---

Follow us on Social Media

Have feedback or questions? Email us atnews@costar.com

---

**IN THIS ARTICLE**

**Properties**

The Farley Building - Office Portion
390 Ninth Ave, New York, NY

770 Broadway, New York, NY

225 Park Ave, New York, NY

**Companies**

Vornado Realty Trust
Real Estate

**RELATED ARTICLES**

Gross rental income up 10.7% for Inéa

Softcat pounces on sixth floor of Booking.com's Manchester headquarters

Remake spends €16.9 million in Aberdeen

Paris 4th district: Red Bull moves to 16 rue Saint-Antoine

AG Real Estate France finalizes the sale of Up-On

Get In Touch

888-226-7404

REQUEST DEMO

**Company**

About CoStar

CoStarGroup.com

Careers

Press Room

Privacy Notice

CA: Do Not Sell My Personal Info

Cookie Preferences

Terms of Use

Help Fight Data Theft

Accessibility

Contact Us

## Social

© 2025 CoStar Group